UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IVAN GREEN,

        Plaintiff,                                    Hon. Ellen S. Carmody

v.

                                                        Case No. 1:14-cv-461

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On July 7, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #10).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords

to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 31 years of age on his alleged disability onset date. (Tr. 202). He successfully completed high school and worked previously as a shipping/receiving clerk. (Tr. 25-26). Plaintiff applied for benefits on February 14, 2011, alleging that he had been disabled since December 5, 2008, due to diabetes, depression, and lower extremity pain. (Tr. 202-28, 257). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 83-201). On August 23, 2012, Plaintiff appeared before ALJ Richard Gartner with testimony being offered by Plaintiff, Plaintiff's mother, and a vocational expert. (Tr. 33-72). In a written decision dated November 15, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 17-27). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2012. (Tr. 19). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) diabetes mellitus; (2) diabetic neuropathy; (3) hypertension; and (4) alcohol abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19-22). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps/stairs; (2) he cannot climb ladders, ropes, or scaffolds; (3) he cannot work around dangerous machinery or unprotected heights; and (4) he is limited to work that does not involve the handling, sale, or access to alcoholic beverages. (Tr. 22).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case

here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the lower peninsula of Michigan approximately 4,950 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 66-69). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **Dr. Horace Davis' Opinion**

On September 14, 2012, Dr. Horace Davis completed a one-page form regarding Plaintiff's physical residual functional capacity. (Tr. 600). Dr. Davis reported that during an 8-hour workday, Plaintiff can sit, stand, and walk for only one hour each. (Tr. 600). The doctor also reported that Plaintiff can occasionally lift up to 10 pounds, but can never lift more than 10 pounds. (Tr. 600). The doctor reported that Plaintiff can occasionally perform "fine finger movements" and "hand/eye coordinated movements," but can never engage in pushing/pulling activities. (Tr. 600). The ALJ accorded "some, but not great weight" to Dr. Davis' opinions. (Tr. 24-25). Plaintiff asserts that he is entitled to relief because the ALJ failed to articulate a sufficient basis for his decision to afford less than controlling weight to Dr. Davis' opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the

ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

With respect to Dr. Davis' opinion, the ALJ concluded as follows:

> In this case, Dr. Davis' opinions are not supported by his own treatment records, nor the objective clinical examination findings of other clinicians. Dr. Davis is a family practitioner and not an endocrinologist. Thus, he is offering opinions outside his area of expertise. Moreover, the claimant's episodes of diabetic ketoacidosis result from his poor medical compliance (Ex 16F/6), or noncompliance (Ex 17F/4). The claimant has had diabetes for many years, but has not been practicing diabetes management as he should (Ex 20F/7). Dr. Davis' opinions are inconsistent with the claimant's longitudinal medical record that shows his long history of noncompliance, as well as the fact the claimant's symptoms improve and resolve with proper diabetes management. For these reasons, Dr. Davis' opinions are given some, but not great weight.

(Tr. 24-25).

The ALJ's conclusions are supported by substantial evidence. On multiple occasions, Plaintiff acknowledged that he was not following his care providers treatment instructions. (Tr. 324, 330). Likewise, Plaintiff's care providers repeatedly noted that Plaintiff was not following treatment

8

instructions. (Tr. 344, 552, 570, 575). Dr. Davis' contemporaneous treatment notes do not support his subsequently expressed opinion that Plaintiff suffers from such extreme limitations. (Tr. 385-424, 513-16, 537-56, 598-99). Moreover, the results of physical examinations conducted by other medical professionals revealed findings completely at odds with Dr. Davis' opinions. For example, the results of a May 24, 2011 physical examination were entirely consistent with the ALJ's RFC determination. (Tr. 519-21). A May 26, 2011 venous examination of Plaintiff's lower extremities revealed no evidence of deep vein thrombosis. (Tr. 522). On December 22, 2011, and again on February 17, 2012, Plaintiff reported that his symptoms were relieved by following his prescribed diet and taking insulin as directed. (Tr. 548, 552). In sum, the ALJ articulated legitimate reasons for discounting Dr. Davis' opinions and those reasons are supported by substantial evidence. Accordingly, this argument is rejected.

**II.        Plaintiff's Credibility**

At the administrative hearing, Plaintiff testified that he was impaired to an extent far greater than recognized by the ALJ. Specifically, Plaintiff testified that many mornings he is too weak to even get out of bed and simply is not "up to" working. (Tr. 46-50). Plaintiff testified that he does not engage in any activities and instead "just lay[s] around and lounge[s] in the chair with [his] feet propped up." (Tr. 50-55). The ALJ found Plaintiff to be less than credible and, therefore, discounted his subjective allegations. Plaintiff asserts that he is entitled to relief because the ALJ's rationale for discounting his testimony is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th

9

Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard.  *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be

accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

In support of his decision to discount Plaintiff's credibility, the ALJ observed as follows:

> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those reported above. Specifically, the undersigned is not persuaded the claimant follows his doctors' advice and is compliant with treatment recommendations, as a careful review of the longitudinal medical record shows otherwise. Indeed, the claimant's treatment records reflect his physicians' "long conversation[s] with him about the importance of taking his medications and quitting smoking" (e.g., Ex 2F/18). Nevertheless, he exhibited poor compliance/non-compliance (Ex 2F/1), and his physicians have been unclear whether he takes his prescriptions on a regular basis (Ex 2F/l, 4, 6, 12).
>
> Despite his having been advised to stop smoking, the claimant continues to smoke up to a pack of cigarettes a day (Ex IF, 18F/4). He is also noncompliant with his diet, checking his blood glucose regularly, having reported going for a week to a week and a half between checking his blood sugar (poor compliance) (Ex 3F/8),

11

medical noncompliance ((Ex 3F/2); see also Ex 15F/14, "unless he improves compliance and insulin use the pain will continue to worsen; Ex 16F/7, "has a longstanding history of medical noncompliance. Unless he changes his behaviors he will likely [continue] to present with similar problems in the future"; Ex 17F/2 the claimant follows an "inappropriate diet"; Ex 18F/S "we have repeatedly spoken with him during previous admissions as well as his outpatient visits about the need to use his insulin therapy regularly.").

If the claimant were experiencing the level of symptoms he alleges, it would logically follow that he would adhere to treatment recommendations designed to alleviate his symptoms. His failure to do so detracts from his credibility.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Following his alleged onset date, the claimant reported to his therapist he had not been bothered at all by employment problems (Ex 9F/38). Further, he described his diabetes symptoms as mild and worsening, but relieved by following his diet and taking insulin (Ex 15F/12). The claimant denied experiencing headaches, blurred vision, joint pain/swelling (Ex 15F/12), and his gait and posture were observed to be normal (Ex 15F/13, 17).

Dr. Jacobson observed the claimant's diabetes appeared fully controlled. While the claimant displayed a mild gait disturbance during that examination, he did not require the use of an assistive walking device. Further, he had no restriction in his range of motion, no sensory deficit, fine motor skill deficit or grip strength deficit. Moreover, the claimant was in no cardiovascular respiratory distress, nor diabetes crisis.

The claimant's lifestyle is not consistent with that of a person who is disabled or who believes that his condition is life-threatening. He is aware of the complicity of his diet, substance abuse and noncompliance with his medication regimen in relation to his health. The claimant has not been compliant with his doctors'

recommendations despite being advised on several occasions by examining clinicians since 2005 to stop smoking, follow a diabetic diet and be compliant with his medication/insulin use. His own primary care physician warned the claimant of the risk of worsening symptoms if he continued to be noncompliant (Ex 15F/14). The United States Court of Appeals for the Sixth Circuit has held that a claimant was not entitled to benefits where he ignored the instructions of his physicians, including stopping smoking. The Court stated that the Social Security Act did not repeal the principle of individual responsibility.

> Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege- but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride. *Sias v Secretary of Health and Human Services*, 861 F2d 475 (6th Cir, 1988).

Ms. Wyrick's[2] reports (Ex 3E, 6E) and testimony does not establish that the claimant is disabled. Since Ms. Wyrick is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the testimony is questionable. Moreover, by virtue of the relationship as the claimant's mother, she cannot be considered a disinterested third party witness whose reports of restriction in functioning would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. In accordance with Social Security Ruling 06-03p, these statements are given some weight; however, the level of the claimant's functioning described is not supported by the weight of credible medical evidence of record.

(Tr. 22-24).

In sum, the ALJ discounted Plaintiff's allegations because such are contradicted by the medical record and are, moreover, belied by Plaintiff's failure to comply with his care providers

---

[2] Ms. Wyrick is Plaintiff's mother.

treatment instructions.  These are appropriate grounds, supported by substantial evidence as discussed above, on which to discount Plaintiff's credibility.  Plaintiff's related argument that it was improper for the ALJ to reference his failure to stop smoking is not well taken.  Plaintiff was instructed on several occasions that his decision to continue smoking would only worsen his impairments and symptoms.  Plaintiff's subsequent refusal to stop smoking is a legitimate factor to consider in evaluating Plaintiff's credibility.  *See*, *e.g.*, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Marshall v. Commissioner of Social Security*, 2015 WL 777940 at *5 (E.D. Mich., Feb. 24, 2015) ("under Sixth Circuit precedent, the ALJ was permitted to consider Plaintiff's continued smoking habit in evaluating his credibility").  The ALJ's decision to discount Plaintiff's credibility is legally sound and supported by substantial evidence.  Accordingly, this argument is rejected

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Date:  June 23, 2015                                          /s/ Ellen S. Carmody
                                                                                       ELLEN S. CARMODY
                                                                                        United States Magistrate Judge